# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

* * *

| | |
|---|---|
| AARON SLEDGE,<br><br>                Plaintiff,<br><br>    v.<br><br>CHARLES DANIELS, *et al.*,<br><br>                Defendants. | Case No. 3:23-CV-00140-ART-CLB<br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1]<br><br>[ECF Nos. 31, 32] |

This case involves a civil rights action filed by Plaintiff Aaron Sledge ("Sledge") against Defendants Charles Daniels, Kody Holloway, Kyle Olsen, and Robert Suwe (collectively "Defendants"). Pending before the Court is Sledge's Motion for Summary Judgment. (ECF No. 31.) Defendants opposed, (ECF No. 35), and Sledge replied, (ECF Nos. 37, 39). Defendants also filed a Motion for Summary Judgment, (ECF No. 32), which Sledge opposed, (ECF No. 36), and Defendants replied, (ECF No. 38). For the reasons stated below, the Court recommends Defendants' motion, (ECF No. 32), be granted and Sledge's motion, (ECF No. 31.) be denied.

## I.  FACTUAL BACKGROUND[2] AND PROCEDURAL HISTORY

Sledge is an inmate in the custody of the Nevada Department of Corrections ("NDOC"). (ECF No. 1-1 at 1.) During the events of this case, Sledge was housed at Warm Springs Correctional Center ("WSCC") (*Id.*)

In 2020, the NDOC enforced a policy to inspect and if necessary, open and search, mail suspected of containing contraband. (ECF No. 32-18.) If mail was suspected of containing narcotics, the mail would be opened and tested for controlled substances. (*Id.*) Any mail that was found to contain illegal substances or contraband would be considered

---

[1] This Report and Recommendation is made to the Honorable Anne R. Traum, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2] The following facts are provided from the parties' briefing and submitted exhibits are undisputed unless otherwise noted.

"rejected" and the inmate would receive notice of the rejected the item and the reasons for the rejection. (ECF No. 32-2.)

On September 18, 2020,³ WSCC received mail addressed to Sledge. (ECF No. 32-6.) The mail was suspected of containing illegal contraband. (*Id.*) Officer Kody Hollaway ("Officer Holloway") inspected the mail and "noticed several pages were coated in an unknown liquid and emanating an unusual smell." (ECF No. 32 at 3 (citing ECF No. 32-6).) Officer Holloway tested the pages, which resulted in a presumptive positive result for a controlled substance. (ECF No. 32-6.) Officer Holloway issued an investigation report which is provided to the Court as Exhibit G to Defendants' motion. (*Id.*) On October 16, 2020, Sledge received a "Notice of Charge" related to the September incident and was informed he was being charged with conspiracy to bring drugs into WSCC. (ECF No. 32-5.) Sledge was told to review Officer Holloway's investigation report and provided the specific report number for Sledge's reference. (*Id.*)

On December 16, 2020, Sledge's disciplinary hearing related to the September incident took place. (ECF No. 32 at 4.) Sledge was asked if he spoke English, which was answered affirmatively. (*Id.*) Sledge was asked if he wanted substitute counsel, to which he stated no. (*Id.*) Sledge was asked if he would like to call witnesses, which he declined. (*Id.*) Sledge was provided the opportunity to, and did speak to, the hearing officer regarding the incident. (*Id.*) The hearing officer reviewed Officer Holloway's report from the September incident and spoke with him over the phone. (*Id.*) After reviewing all the evidence, the hearing officer dismissed the charge, and no sanctions were imposed on Sledge pertaining to the September incident. (ECF No. 32-3.)

On October 30, 2020,⁴ Office Holloway reviewed mail for inmates on the mail monitoring list. (ECF No. 32-10.) On that day, mail that was determined to be for Sledge was inspected and found to be "coated in an unknown liquid with an unusual smell

---

³   The Court refers to events related to the September 18, 2020 mail inspection as the "September incident."

⁴   The Court refers to events related to the October 30, 2020 mail inspection as the "October incident."

emanating from it." (*Id.*) Officer Holloway tested the mail which resulted in presumptively positive result for a controlled substance. (*Id.*) Officer Holloway issued an investigation report which is provided to the Court as Exhibit K to Defendants' motion. (*Id.*) On the same day, Sledge received a "Notice of Charge" related to the October incident and was informed he was being charged with conspiracy to bring drugs into WSCC. (ECF No. 32-9.) Sledge was informed to review Officer Holloway's investigation report and provided the specific report number for Sledge's reference. (*Id.*)

On December 12, 2020, Sledge's disciplinary hearing related to the October incident took place. (ECF No. 32 at 5.) Sledge was asked if he spoke English, which was answered affirmatively. (*Id.*) Sledge was informed that he had a right to substitute counsel for the limited purpose of helping Sledge understand an issue if an issue was too complex or if he did not understand the purpose of the hearing. (*Id.*) Sledge explicitly chose to proceed with the hearing without substitute counsel. (*Id.*) Sledge was provided the opportunity to, and did speak, to the hearing officer regarding the incident. (*Id.*) At the hearing, Sledge asked to review the evidence but was informed that much the evidence used during the hearing was confidential to ensure information regarding NDOC safeguards are not disseminated to inmates. (*Id.* at 6.) Sledge was asked if he would like to call witnesses and Sledge asked for Officer Holloway to be made available. (*Id.*) The disciplinary hearing officer stated Officer Holloway was not able to attend the hearing as he was not working that day. (*Id.*) The hearing officer further stated Officer Holloway was not needed since his report was available for review and further testimony "would have been cumulative and unnecessary." (*Id.* at 22.) The hearing officer found Sledge guilty of conspiracy to introduce drugs into WSCC during the October incident and Sledge was sanctioned with a loss of sixty statutory good time credits and required to pay restitution toward the cost of the drug tests. (*Id.* at 6.) Ultimately, Sledge was not required to pay restitution. (*Id.*)

Following the hearings, Sledge filed a grievance challenging the decision from the October incident disciplinary hearing. (ECF No. 32-14 at 5.) Sledge's grievances were

denied because sanctions were found to be proper for the October incident and that some of the evidence he was requesting to review could not be provided due to the confidential and sensitive nature of the information within. (*Id.*)

Between the September incident and the December 2020 hearings, Sledge did not issue kites for the evidence or investigation reports related to either the September or October incidents. (ECF No. 32-16.) On November 6, 2020, Sledge filed an informal grievance acknowledging he had received the notice of charges for both incidents but that he did not have an opportunity to review the facts regarding the charges and he did not receive an unauthorized mail form. (ECF No. 32-14 at 9.) In response, the NDOC informed Sledge that a form was filed. (*Id.*) Sledge filed a second grievance on November 19, 2020, but was informed that because he never signed the grievance, the grievance was considered abandoned. (*Id.* at 8.) Neither grievance was appealed. (*Id.*) Pursuant to NDOC Administrative Regulations, "an inmate shall file a grievance after failing to resolve the matter by other means such as discussion with staff or submitting an inmate request form." (ECF No. 32-20 at 9.)

On March 31, 2023, Sledge initiated the present suit against Defendants. (ECF Nos 1, 4.) In its Screening Order, the Court permitted Sledge's Fourteenth Amendment disciplinary due process claim against Daniels, Suwe, Peterman[5], Daniels, and Olson to proceed. (ECF No. 3 at 6.) On February 24, 2024, Sledge moved for summary judgment. (ECF No. 31.) Defendants opposed, (ECF No. 35), and Sledge replied, (ECF Nos. 37; 39). On March 7, 2025, Defendants also moved for Summary Judgment. (ECF No. 32.) Sledge opposed, (ECF No. 36), and Defendants replied, (ECF No. 38).

///
///
///

---

[5] On November 21, 2024, the Court issued a notice of intent to dismiss pursuant to Fed. R. Civ. P. 4(m), because service on Defendant Peterman had not been effectuated. (*See* ECF No. 26.) To date, no proof of service has been filed as to Defendant Peterman. Thus, the Court recommends the claims against Defendant Peterman be dismissed without prejudice based on a failure to effectuate service pursuant to Fed. R. Civ. P. 4(m).

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Id.* "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Id.* However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving

party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. *See* Fed. R. Civ. P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden is "not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence." *Coomes v. Edmonds Sch. Dist. No. 15*, 816 F.3d 1255, 1259 n.2 (9th Cir. 2016) (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita*, 475 U.S. at 586-87.

When a *pro se* litigant opposes summary judgment, his or her contentions in motions and pleadings may be considered as evidence to meet the non-moving party's

burden to the extent: (1) contents of the document are based on personal knowledge, (2) they set forth facts that would be admissible into evidence, and (3) the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

Upon the parties meeting their respective burdens for the motion for summary judgment, the court determines whether reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). The court may consider evidence in the record not cited by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3). Nevertheless, the court will view the cited records before it and will not mine the record for triable issues of fact. *Oracle Corp. Sec. Litig.*, 627 F.3d at 386 (if a nonmoving party does not make nor provide support for a possible objection, the court will likewise not consider it).

### III.   DISCUSSION

#### A.   Defendants' Motion for Summary Judgment

Defendants move for summary judgment on Sledge's claim of lack of due process in his disciplinary proceedings. (ECF No. 32.) Defendants concede Sledge has a liberty interest in the statutory credits he lost following the December 12, 2020 disciplinary hearing regarding the October incident.[6] (*See* ECF No. 38 at 2, n.1.) However, Defendants argue Sledge has failed to establish that his due process rights were violated, and Defendants are immune from any alleged unlawful conduct under the doctrine of qualified immunity. (ECF No. 32 at 16-23, 24-27.) Defendants also argue that none of the Defendants personally participated in the alleged constitutional violation. (*Id.* at 10-14.) At summary judgment, Defendants must show that there is absence of evidence to

---

[6] Because Sledge was not disciplined for the September incident, he has no liberty interest from the Defendants alleged actions pertaining to the September incident. (*See* ECF No. 32-7 at 3.) Because there is no liberty interest arising from the Defendants alleged actions pertaining to the September incident, there are no due process concerns. *See Sandin v. Conner*, 515 U.S. 472, 487 (1995). The Court's analysis focuses on whether Sledge's due process rights have been violated following the October incident.

7

support Sledge's claim of a due process violation or that a reasonable jury would not be able to find in Sledge's favor. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d at 593-94. The Court addresses each element of disciplinary due process as it pertains to Sledge's claim in turn.

### 1.   Fourteenth Amendment Disciplinary Due Process

The Fourteenth Amendment provides, "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV, § 1. The plaintiff must first establish the existence of a liberty interest for which the protection is sought. *Sandin v. Conner*, 515 U.S. 472, 487 (1995). Once the plaintiff has established one of these interests is at stake, the court's analysis turns to whether the inmate suffered a denial of adequate procedural protections. *Biggs v. Terhune*, 334 F.3d 910, 913 (9th Cir. 2003) (citations omitted).

"The Supreme Court established in *Wolff v. McDonnell* that there are procedural due process rights that a prisoner must be afforded in the context of a prison disciplinary proceeding prior to being deprived of a protected liberty interest." *Melnik v. Dzurenda*, 14 F.4th 981, 985 (9th Cir. 2021) (citing *Wolff v. McDonnell*, 418 U.S. 539, 555-72 (1974)). When a protected liberty interest exists and a prisoner faces disciplinary charges, prison officials must provide the prisoner with (1) a written statement at least twenty-four hours before the disciplinary hearing that includes the charges, a description of the evidence against the prisoner, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) legal assistance where the charges are complex or the inmate is illiterate. *See Wolff*, 418 U.S. at 563-70; *see also Ashker v. Newsom*, 81 F.4th 863, 878 (9th Cir. 2023) ("Among other requirements, *Wolff* requires that an inmate facing a disciplinary hearing be provided written notice of the charges and the ability to call witnesses and present documentary evidence in his defense.").

"[I]f state procedures rise above the floor set by the due process clause, a state could fail to follow its own procedures yet still provide sufficient process to survive

constitutional scrutiny." *Walker v. Sumner*, 14 F.3d 1415, 1420 (9th Cir. 1994). Thus, an inmate's right to due process is violated only if he is not provided with process sufficient to meet the standards outlined in Wolff. *Id.*

### i.   Written Statement

Defendants argue Sledge was provided with a written notice of the October incident charge at least twenty-four hours before his disciplinary hearing and the written statement contained information as to the evidence relied upon and the reasons for the disciplinary action. (ECF No. 32 at 18-19.) Defendants have provided the "Notice of Charge" pertaining to the October incident, which was served on Sledge on October 30, 2020, well over twenty-four hours before the hearing that took place on December 12, 2020. (*See* ECF No. 32-9 at 1.) The notice provides a clear summary of the violation including the investigation report number, the prison regulations violated, the individuals involved in the incident and investigation, and other potential evidence available for Sledge to review. (*Id.*) The investigation report for the October incident also provides a summary of the violation, the individuals involved, and potential evidence available for Sledge to review. (ECF No. 32-10 at 1.) Additionally, Defendants provided evidence to show that Sledge himself acknowledged the receipt of the written notice and was aware of the information within. (ECF No. 32-14 at 8.)

Based on the above evidence, the Court finds Defendants have submitted sufficient evidence to show that Sledge was provide a written notice of the charges at least twenty-four hours before the disciplinary hearing that included a written statement of the charges and the description of the evidence*.* Therefore, the Court finds Defendants have met their initial burden on summary judgment by showing the absence of a genuine issue of material fact as to the written statement requirement. *See Celotex Corp.*, 477 U.S. at 325. The burden now shifts to Sledge to produce evidence that demonstrates an issue of fact exists as to whether Defendants failed to provide a proper written statement. *See Nissan*, 210 F.3d at 1102.

In his opposition, Sledge asserts facts surrounding the September incident and

raises arguments of retaliation and "fraud on the Court." (ECF No. 36.) More specifically, Sledge asserts the October incident was retaliation and Defendants have filed the "same false evidence" for the October incident that was used in the September incident for which he was found not guilty. (*Id.*) As Defendants aptly note, Sledge failed to raise an argument regarding the notice of charges and the accompanying written statement. (ECF No. 38 at 9.) Sledge does not provide any evidence to support these claims, even if the Court was permitted to evaluate the merit of these arguments. Furthermore, Defendants correctly point out that a claim of retaliation was alleged for the first instance in Sledge's opposition and was not screened by the Court. (*Id.*; ECF No. 12.) Additionally, the Court has reviewed the Defendants exhibits pertaining to the September and October incidents and finds that Defendants have not perpetuated fraud on the Court because the evidence used in the September and October incidents were distinct and independently supported and Sledge has not provided any evidence to demonstrate otherwise. (*See* ECF Nos. 32-6; 32-7; 32-9; 32-10.)

Therefore, Sledge has failed to meet his burden on summary judgment to establish that he was not provide an adequate written notice of the charges at least twenty-four hours before the disciplinary hearing that included a written statement of the charges and the description of the evidence.

Based on the above, the Court recommends granting Defendants' motion for summary judgment as to the first prong of Sledge's disciplinary due process claim.

### ii. Opportunity to Review and Present Evidence

"Chief among the due process minima outlined in *Wolff* [is] the right of an inmate to call and present witnesses and documentary evidence in his defense before the disciplinary board." *Ponte v. Real*, 471 U.S. 491, 495 (1985). Inmates have "a constitutional right under the Due Process Clause of the Fourteenth Amendment to be permitted to examine documentary evidence for use in the prison disciplinary hearing." *Melnik*, 14 F.4th at 984. "If a prisoner must be allowed to present evidence in his defense, it necessarily follows that he must have some right to prepare for that presentation. With

no access to the evidence that will be presented against him, a prisoner could neither build a defense nor develop arguments and evidence to contest the allegations at the disciplinary hearing." *Id.* at 985. "[A] prisoner's right to present a defense must extend to the preparation of a defense, including compiling evidence." *Id.* at 986.

"When prison officials limit an inmate's efforts to defend himself, they must have a legitimate penological reason." *Koenig v. Vannelli*, 971 F.2d 422, 423 (9th Cir. 1992). An inmate's right to present witnesses may legitimately be limited by "the penological need to provide swift discipline in individual cases . . . [or] by the very real dangers in prison life which may result from violence or intimidation directed at either other inmates or staff." *Ponte* 471 U.S. at 495. Likewise, "an inmate facing disciplinary proceedings should be allowed to . . . present documentary evidence in his defense when permitting him to do so w[ould] not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566. The burden of proving adequate justification for denial of a request to present witnesses or produce documentary evidence rests with the prison officials. *Ponte*, 471 U.S. at 499. "The requirements of due process are satisfied if some evidence supports" the disciplinary decision. *Superintendent, Mass. Corr. Inst., Wapole v. Hill*, 472 U.S. 445, 455 (1985).

Defendants argue Sledge was given ample opportunity to review the evidence before the hearing and to call witnesses and present documentary evidence at the October incident hearing. (ECF No. 32 at 19-22.) As stated above, Defendants provided the written notice of charges which reference the investigation report prepared by Officer Holloway. Sledge had over a month to request a copy of the investigation report or for other evidence regarding the incident via kite. Defendants have provided evidence which show Sledge did not submit a kite for the investigation reports nor any kites requesting evidence pertaining to the October incidents. (*See* ECF No. 32-16.) Defendants further note Sledge did file grievances seeking evidence but the proper protocol for Sledge to request the information was through kites per Administrative Regulation 740. (ECF Nos. 32-14 at 8; 32-20 at 9.)

       Defendants further argue much of the evidence that was relevant for the hearing could not be provided to Sledge due to concerns of institutional safety. (ECF No. 32 at 21.) For example, Defendants argue the original envelope could not be provided as it would permit the introduction of contraband to the inmate population. (*Id.*) Defendants also argue some information related to access control, test procedures, and prison guidelines could not be provided as it would provide information on how to circumvent NDOC safeguards. (*Id.*)

       Defendants also provide evidence regarding the October incident hearing which took place on December 12, 2020. During the hearing, the disciplinary hearing officer provided Sledge the opportunity to called witnesses. (*Id.* at 22.) Sledge called Officer Holloway but was informed that Officer Holloway was not working that day and any relevant information Officer Holloway could provide was available through the investigation report. (*Id.*)

       Based on the above evidence, the Court finds Defendants have submitted sufficient evidence to show Sledge was given the opportunity to review the evidence and present a defense. Therefore, the Court finds Defendants has met their initial burden on summary judgment by showing the absence of a genuine issue of material fact as to the opportunity to review and present evidence. *See Celotex Corp.*, 477 U.S. at 325. The burden now shifts to Sledge to produce evidence that demonstrates an issue of fact exists as to this element. *See Nissan*, 210 F.3d at 1102.

       In his opposition, Sledge again asserts arguments of retaliation and "fraud on the Court." (ECF No. 36.) Sledge asserts he "requested to see the evidence against him but was denied." (*Id.* at 3.) However, he provides no evidence or further information to support his assertions. He provides no evidence to demonstrate Defendants perpetuated fraud by submitting evidence used in the September incident hearing as evidence for the October incident. Sledge's mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *See Matsushita*, 475 U.S. at 586-87.

The Court finds Defendants have provided sufficient evidence to show Sledge had ample opportunity to request and review evidence but failed to do so through the proper procedures. As the Ninth Circuit noted in *Melnik*, the inmate's request to review the evidence "need not be extremely detailed" but it "should be sufficient to put the prison official on notice of what is sought." 14 F.4th at 987. Furthermore, Defendants correctly note some of the evidence would not be available for Sledge to review due to a legitimate penological justification of preventing the spread of contraband and information regarding NDOC safeguards. *Melnik* requires prison officials to permit the viewing of certain evidence through alternative means such as copies or photographs. *Id.*; *see also McNeil v. Gittere*, No. 3:20-CV-00668-APG-CSD, 2023 WL 3881372, at *3 (D. Nev. Jan. 10, 2023), *report and recommendation adopted*, No. 3:20-CV-00668-APG-CSD, 2023 WL 3615348 (D. Nev. May 22, 2023) (finding an issue of fact when the plaintiff properly "requested all of the evidence being used against him" and Defendants failed to provide alternatives means to review evidence of contraband). But again, Sledge did not properly request for any evidence prior to the hearing through proper means. Finally, Sledge was not denied due process at the disciplinary hearing as he had the opportunity to present his case and call witnesses.

Therefore, Sledge has failed to meet his burden on summary judgment to establish that he was not provided the opportunity to review evidence, present his case, and call witnesses.

Based on the above, the Court recommends granting Defendants' motion for summary judgment as to the second prong of Sledge's disciplinary due process claim.

### iii. Legal Assistance When Necessary

Finally, inmates must be afforded legal assistance where the charges are complex, or the inmate is illiterate. *Wolff*, 418 U.S. at 563-70. This concern is not present in the instant case, as the record reflects Sledge's ability to file and prosecute the instant case as a *pro se* party. Sledge's ability to litigate the instant case shows he is not illiterate, and the charges are not too complex. Sledge has provided no argument in his opposition to

demonstrate otherwise. Thus, the Court recommends granting Defendants' motion for summary judgment as to the third prong of Sledge's disciplinary due process claim as well.

Based on the above, the Court finds Defendants are entitled to summary judgment as to Sledge's claim of lack of disciplinary due process and recommends that Defendants' motion be granted.[7]

### 2. Personal Participation

Even though the Court finds Sledge's Fourteenth Amendment rights were not violated, the Court addresses Defendants' arguments related to personal participation. Defendants argue that Daniels, Suwe, Olson, and Holloway did not personally participate in the alleged constitutional violation and are entitled to summary judgment on this alternate basis. (ECF No. 32 at 10-13.)

"Liability under [§] 1983 arises only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).

Defendants have provided evidence to show neither Daniels, Suwe, nor Olson received any kites or grievances regarding the October incident. (ECF No. 32 at 10-13.) Daniels, Suwe, or Olson were not aware of Sledge's disciplinary hearings, let alone participated in the hearings or the events leading up to the hearings. (*Id.*) Furthermore, regarding Suwe, Defendants provide evidence establishing that Suwe became an

---

[7] Because the Court recommends Defendants' motion for summary judgment be granted on the merits of the disciplinary due process claim, it need not address Defendants' argument regarding qualified immunity.

institutional investigator after Sledge's hearings had already completed and thus did not personally participate in the investigations for either incident. (*Id.*)

Regarding Officer Holloway, Defendants provide evidence establishing that even though Officer Holloway issued the notice of charges, Officer Holloway did not receive any kites or grievances between the service of the notice and the disciplinary hearing. (*Id.*) Officer Holloway was not requested by Sledge for an opportunity to review evidence. Officer Holloway was not listed in any of Sledge's grievances during the underlying events. Officer Holloway was not present at the disciplinary hearing and as stated above, the disciplinary hearing officer found it acceptable for Officer Holloway to be absent from the hearing. Accordingly, the Court finds Defendants have provided sufficient evidence to show that none of the named Defendants personally participated in Sledge's alleged claim of lack of disciplinary due process.

Based on the above, the Court finds Defendants have met their initial burden to show they did not personally participate in any alleged disciplinary due process violation. The burden shifts to Sledge to establish that a genuine dispute of material facts does exist. *See Matsushita*, 475 U.S. at 586. However, Sledge makes no argument in his opposition regarding personal participation. (*See* ECF No. 36.) Furthermore, based on the evidence provided by Defendants, there is no evidence Sledge could provide which establishes a causal connection between Defendants' actions and Sledge's alleged constitutional violation. *See Ashcroft*, 556 U.S. at 676 (for § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.) The evidence submitted by Defendants shows that the investigation process is entirely independent from the process for assessing the sanctions.

Accordingly, the Court recommends Defendants' motion for summary judgment, (ECF No. 32), be granted on this independent basis.

///

///

### B. Sledge's Motion for Summary Judgment

Sledge also moves for summary judgment on his claim of lack of due process for his disciplinary hearings. (ECF No. 31.) Other than a few brief sentences regarding some of the facts of the case and exhibits pertaining to the September incident and its disciplinary hearings, Sledge's motion is largely incoherent, and it is unclear to the Court what Sledge is asserting as a basis for summary judgment. (*See id.*) Defendants' opposition to Sledge's motion is substantively identical to Defendants' motion for summary judgment. (*See* ECF Nos. 32, 35.) Based on the Court's review of the parties briefing as it relates to Sledge's motion and the Court's analysis of Defendants' motion, the Court recommends denying Sledge's motion for summary judgment.

## IV. CONCLUSION

For good cause appearing and for the reasons stated above, the Court recommends that Sledge's motion for summary judgment, (ECF No. 31), be denied, Defendants' motion for summary judgment, (ECF No. 32), be granted.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

///
///
///
///
///

## V.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Sledge's motion for summary judgment, (ECF No. 31), be **DENIED**.

**IT IS FURTHER RECOMMENDED** that Defendants' motion for summary judgment, (ECF No. 32), be **GRANTED.**

**IT IS FURTHER RECOMMENDED** that Defendant Peterman be **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** in favor of Defendants and **CLOSE** this case.

**DATED**: April 24, 2025

_____
**UNITED STATES MAGISTRATE JUDGE**